ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 26, 2005

Mr. John D. White
Chairman, Board of Regents
The Texas A&M University System
Post Office Box C-1
College Station, Texas 77844-9021

Opinion No. GA-0352

Re: Whether the Interlocal Cooperation Act, Government Code chapter 791, permits a state agency governing body to delegate authority to approve an interlocal contract (RQ-0321-GA)

Dear Mr. White:

The Texas A&M University System ("TAMUS") asks whether the Interlocal Cooperation Act, Government Code chapter 791,[1] permits a state agency governing body to delegate authority to approve an interlocal contract.[2]

We understand that the Texas Engineering Experiment Station ("TEES"), a component of TAMUS,[3] was involved in contract negotiations with a municipally owned utility. *See* Request Letter, *supra* note 2, at 1. The parties intended to enter into an interlocal contract under chapter 791 of the Government Code, which authorizes a local government to contract with another local government or a state agency. *See* Act of May 17, 2005, 79th Leg., R.S., H.B. 1562, § 1 (to be codified at TEX. GOV'T CODE ANN. § 791.011(a)) (effective immediately) ("A local government may contract or agree with another local government . . . to perform governmental functions and services in accordance with this chapter.")[4]; TEX. GOV'T CODE ANN. § 791.011(b) (Vernon 2004) ("A party

---

[1]*See* TEX. GOV'T CODE ANN. § 791.002 (Vernon 2004) ("This chapter may be cited as the Interlocal Cooperation Act.").

[2]*See* Letter from Mr. Delmar L. Cain, General Counsel, The Texas A&M University System, to Honorable Greg Abbott, Texas Attorney General (Feb. 22, 2005) (on file with Opinion Committee, *also available at* http://www.oag .state.tx.us) [hereinafter Request Letter].

[3]*See* TEX. EDUC. CODE ANN. § 88.500 (Vernon 2002) ("The Texas Engineering Experiment Station is a part of The Texas A&M University System under the management and control of the board of regents of The Texas A&M University System.").

[4]Subsection (a) was amended by the Seventy-ninth Legislature to read:

(a) A local government may contract or agree with another local government or a federally recognized Indian tribe, as listed by the United States

(continued...)

to an interlocal contract may contract with a: (1) state agency, as that term is defined by Section 771. 002; or (2) similar agency of another state."); *see also* Act of May 25, 2005, 79th Leg., R.S., H.B. 3384, § 1 (to be codified at TEX. GOV'T CODE ANN. § 791.003(4)) (effective immediately) (defining the term "local government" to include a municipality or other political subdivision of this state); TEX. GOV'T CODE ANN. § 791.003(5) (Vernon 2004) (defining the term "political subdivision" to include "any corporate and political entity organized under state law"). Under chapter 791, the term "state agency" includes "a state university or college, a junior college district, or any service or part of a state institution of higher education." Act of May 20, 2005, 79th Leg., R.S., H.B. 1331, § 1 (to be codified at TEX. GOV'T CODE ANN. § 771.002(1)(B)) (effective immediately); TEX. GOV'T CODE ANN. § 791.011(b) (Vernon 2004).

During the negotiations, a dispute arose regarding section 791.011(d)(1) of the Government Code. *See* Request Letter, *supra* note 2, at 1. Section 791.011(d) delineates certain requirements for an interlocal contract:

> (d) An interlocal contract must:
>
> > (1) be authorized by the governing body of each party to the contract unless a party to the contract is a municipally owned electric utility, in which event the governing body may establish procedures for entering into interlocal contracts that do not exceed $100,000 without requiring the approval of the governing body;
> >
> > (2) state the purpose, terms, rights, and duties of the contracting parties; and
> >
> > (3) specify that each party paying for the performance of governmental functions or services must make those payments from current revenues available to the paying party.

TEX. GOV'T CODE ANN. § 791.011(d) (Vernon 2004). The municipally owned utility cited section 791.011(d)(1) and claimed that the interlocal contract would not be valid without the TAMUS Board of Regents' express approval. *See* Request Letter, *supra* note 2, at 1. TEES, however, "maintained that express approval of the proposed interlocal contract was not required because the Board of Regents had delegated such authority to TEES as reflected in TAMUS' Policies and Regulations." *Id.*

---

[4](...continued)
> secretary of the interior under 25 U.S.C. Section 479a-1, whose reservation is located within the boundaries of this state to perform governmental functions and services in accordance with this chapter.

Act of May 17, 2005, 79th Leg., R.S., H.B. 1562, § 1 (to be codified at TEX. GOV'T CODE ANN. § 791.011(a)) (effective immediately) (amendment underlined). The amendment to the statute does not affect the conclusion of this opinion.

As a result of the dispute, TAMUS asks two questions regarding how section 791.011(d)(1) should be interpreted. *Id.* at 1, 3. These questions appear to assume that TEES has no contracting authority independent of the TAMUS Board of Regents. However, section 88.501(c) of the Education Code expressly authorizes the TEES to enter into contracts. *See* TEX. EDUC. CODE ANN. § 88.501(c) (Vernon 2002) ("In order to carry out its purposes, the agency may enter into contracts and agreements with other entities."). TAMUS has not briefed whether section 88.501(c) grants TEES independent contracting authority or whether its contracting authority is subject to the TAMUS Board of Regents' authorization and control. *See id.* § 88.500 ("The Texas Engineering Experiment Station is a part of The Texas A&M University System under the management and control of the board of regents of The Texas A&M University System."). TAMUS' questions focus on the Interlocal Cooperation Act's proper interpretation, and we will address its meaning in general terms and not with respect to the particular situation involving TEES.

Before reaching the specific questions about section 791.011(d)(1) of the Government Code, however, we note that TAMUS' query asks us to consider the relationship between the statute's first clause, which pertains to parties to interlocal contracts generally, and its remaining language, which pertains to municipally owned electric utilities. Section 791.011(d)(1) provides in its first clause that an interlocal contract must "be authorized by the governing body of each party to the contract." TEX. GOV'T CODE ANN. § 791.011(d)(1) (Vernon 2004). The remaining language permits municipally owned electric utilities' governing bodies to "establish procedures for entering into interlocal contracts that do not exceed $100,000 without requiring the approval *of* the governing body." *Id.* (emphasis added). TAMUS' query suggests that the express authority given to municipally owned electric utilities' governing bodies to establish such procedures could "mean that other governmental entities may not establish similar procedures." Request Letter, *supra* note 2, at 3.

In construing section 791.011(d)(1), we must give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, .023 (Vernon 2005); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To do so, we must construe it according to its plain language, *see In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985), considering it in the broader context of section 791.011 and chapter 791 as a whole, *see Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions. We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (citations omitted); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (words and phrases to be read in context). Words and phrases must be construed according to their common meanings, *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005), though "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly," *id.* § 311.011(b).

We do not believe that the special provision for municipally owned electric utilities necessarily precludes all other governing bodies from adopting procedures delegating contracting authority. First, the plain language does not require that conclusion. The special provision for municipally owned electric utilities uses the term "approval," whereas the first clause uses the term

"authorized." *Id.* § 791.011(d)(1) (Vernon 2004) (providing that an interlocal contract must (1) "be *authorized* by the governing body of each party to the contract" (2) "unless a party to the contract is a municipally owned electric utility, in which event the governing body may establish procedures for entering into [certain] interlocal contracts . . . without requiring the *approval* of the governing body") (emphasis added). The Interlocal Cooperation Act does not define either term, nor has a court or this office construed section 791.011(d)(1). According to its common meaning, the term "authorize" means "[t]o give legal authority" or "[t]o formally approve." BLACK'S LAW DICTIONARY 129 (7th ed. 1999). Thus, the term "authorize" incorporates but is not limited to "formally approve." In using the broad term "authorized" in section 791.011(d)(1)'s first clause, the legislature did not necessarily require that each contract be formally approved by the contracting entity's governing body.

Moreover, viewing section 791.011(d)(1) in its statutory context, we note that section 791.011(d)'s overall purpose is not to govern how entities authorize contracts but rather to establish the basic requisites for an interlocal contract. *See* TEX. GOV'T CODE ANN. § 791.011(d) (Vernon 2004). And the Interlocal Cooperation Act's purpose is not to govern individual entities' internal operations but rather "to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another and with agencies of the state." *Id.* § 791.001.

Finally, the legislative history does not support the conclusion that the first clause's meaning was narrowed by the special provision for municipally owned electric utilities, which was added later. The Interlocal Cooperation Act has required that a contract be "authorized" by each contracting entity's governing body since its 1971 enactment. *See* Act of May 20, 1971, 62d Leg., R.S., ch. 513, § 4(b), 1971 Tex. Gen. Laws 1751, 1751-52 (enacting the statutory predecessor to Government Code chapter 791, article 4413(32c) of the Revised Civil Statutes). The legislature added the special provision for municipally owned electric utilities in 1999 in Senate Bill 7, a lengthy, detailed provision that deregulated the electric utility industry. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 47, 1999 Tex. Gen. Laws 2543, 2620. Senate Bill 7 included several provisions that were clearly intended to permit municipally owned electric utilities, which are subject to special rules as public entities, to compete in a deregulated environment.[5] The amendment to section 791.011(d)(1) appears to be one such amendment. Because Senate Bill 7 was a deregulation measure that did not focus on interlocal contracting, we do not believe that the legislature's adding the special provision for municipally owned electric utilities in section 791.011(d)(1) modified the first clause's meaning. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) ("In construing a

---

[5]*See, e.g.*, Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 39, 1999 Tex. Gen. Laws 2543, 2558-2614 (adding chapter 40 to the Utilities Code to describe how a municipally owned utility may participate in retail competition), *id.* § 45, at 2617-18 (amending chapter 551 of the Government Code, the Open Meetings Act, to permit a public power utility's governing body to meet in closed session to deliberate regarding certain competitive matters), *id.* § 46, at 2618-20 (amending chapter 552 of the Government Code, the Public Information Act, to provide an exception to required public disclosure for a public power utility's information and records related to certain competitive matters), *id.* § 48, at 2620 (amending Government Code chapter 2256, the Public Funds Investment Act, to authorize a municipality that owns a municipal electric utility to make certain investments).

statute, . . . a court may consider among other matters the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; [and] (3) legislative history.").[6]

TAMUS asks two specific questions about section 791.011(d)(1):

> (1)     For purposes of Government Code Section 791.011(d)(1), may an agency's governing body delegate authority, within the agency, to approve an interlocal contract?

> (2)     Is a municipally owned utility subject to a different standard for purposes of Government Code Section 791.011(d)(1)?

Request Letter, *supra* note 2, at 1.

The initial question involves section 791.011(d)(1)'s first clause, which provides that an interlocal contract must "be *authorized* by the governing body of each party to the contract." TEX. GOV'T CODE ANN. § 791.011(d)(1) (Vernon 2004) (emphasis added). As we have noted, the term "authorize" is a broad term that means either "[t]o give legal authority" or "[t]o formally approve." BLACK'S LAW DICTIONARY 129 (7th ed. 1999). Given this broad meaning, we do not construe the first clause of section 791.011(d)(1) to prohibit or permit delegation. Rather, we construe it to require that a governing body authorize an interlocal contract according to the law applicable to its contracting authority generally. Thus, to determine whether a state agency's governing body may delegate authority to approve an interlocal contract, one must examine the statutes governing the particular agency's contracting authority.[7]

---

[6]Similarly, one might argue that the latter part of the second clause, "in which event *the governing body* may establish procedures for entering into interlocal contracts that do not exceed $100,000 without requiring the approval of *the governing body*," governs all parties to an interlocal contract to which a municipally owned electric utility is a party, because the term "governing body" is not expressly restricted to the governing body of a municipally owned electric utility. *See* TEX. GOV'T CODE ANN. § 791.011(d)(1) (Vernon 2004) (emphasis added). Given this legislative history, however, it appears that the legislature intended the special provision for municipally owned electric utilities to govern only municipally owned electric utilities' contracting authority and did not intend to address contracting authority of other entities that may be parties to interlocal contracts with municipally owned electric utilities. But we need not resolve that issue in this opinion, given that our construction of the first clause resolves TAMUS' query about the TAMUS Board of Regents' authority to delegate approval of an interlocal contract.

[7]For example, a number of statutes require university boards of regents to approve contracts unless the board has adopted contracting authority rules. *See, e.g.*, TEX. EDUC. CODE ANN. §§ 65.34 (Vernon 2002) ("A contract must be approved by the [University of Texas System Board of Regents] or otherwise entered into in accordance with rules of the board relating to contracting authority."), 105.108(a) ("Except as provided by Subsection (b), a contract with the system must be approved by the [University of North Texas System Board of Regents]."), (b) ("The board by rule may delegate to a representative of the board or an employee of the system the authority to negotiate, execute, and approve a contract with the system."), (c) ("A contract that is not approved in accordance with this section is void."), 111.34 ("All contracts of the university shall be approved by a majority of the [University of Houston Board of Regents]. However, the board is authorized to adopt reasonable rules that delegate to the president or his authorized representatives the authority to negotiate, approve, and execute contracts.").

TAMUS asks in particular whether the TAMUS Board of Regents may delegate the authority to approve an interlocal contract. *See* Request Letter, *supra* note 2, at 1. The government of the TAMUS "is vested in a board of nine regents appointed by the governor with the advice and consent of the senate." TEX. EDUC. CODE ANN. § 85.11 (Vernon 2002); *see also id.* § 85.01(2) ("'Board' means the board of regents of The Texas A & M University System."). No statute expressly governs the TAMUS Board of Regents' authority with respect to TAMUS contracts.[8] However, the Board of Regents has express rulemaking authority, *see id.* § 85.21, and is required to appoint a chief executive officer of the university system, *see id.* § 85.17(b). Significantly, the Board of Regents is expressly authorized to delegate authority to the chief executive officer, who is authorized to delegate his or her authority with the Board of Regents' approval:

> The chief executive officer is responsible to the board for the general management and success of the university system, and the board may delegate authority, establish guidelines, and cooperate with the executive officer to carry out that responsibility. The chief executive officer may delegate his authority if approved by the board.

*Id.* § 85.17(d). No statute precludes the TAMUS Board of Regents or the chief executive officer from delegating contracting authority. TAMUS informs us that the Board of Regents has adopted several rules authorizing university officials to enter into contracts without formal Board of Regents approval. *See* Request Letter, *supra* note 2, at 2 (citing TAMUS Policy 25.07 and TAMUS Regulation 25.07.01).

We conclude based on these express statutory provisions that the TAMUS Board of Regents is authorized to adopt rules delegating authority to approve an interlocal contract. Moreover, given this statutory and regulatory framework, a TAMUS interlocal contract entered into as authorized by such Board of Regents rules is "authorized" by the TAMUS Board of Regents for purposes of section 791.011(d)(1) of the Government Code.

TAMUS next asks whether section 791.011(d)(1) establishes "a different standard" for a municipally owned electric utility with respect to delegating interlocal contracting authority. *See* Request Letter, *supra* note 2, at 1. As we have explained, to determine how a governing body must authorize an interlocal contract as required by the first clause in section 791.011(d)(1), one must look to the law governing the particular entity's contracting authority. However, it is clear that the legislature intended section 791.011(d)(1) itself to specifically govern authorization for municipally owned electric utilities' interlocal contracts. According to its plain terms, section 791.011(d)(1), in authorizing the governing body of a municipally owned electric utility to establish procedures for entering into interlocal contracts that do not exceed $100,000 without requiring the approval of the governing body, necessarily permits delegation of such authority. And, by clear implication, section 791.011(d)(1) indicates that a municipally owned electric utility's governing body must approve and may not delegate approval of interlocal contracts that exceed $100,000.

---

[8]*Compare* TEX. EDUC. CODE ANN. ch. 85 (Vernon 2002 & Supp. 2004-05), *and* Act of May 25, 2005, 79th Leg., R.S., S.B. 1883, § 1 (to be codified at TEX. EDUC. CODE ANN. § 85.25), *with* TEX. EDUC. CODE ANN. §§ 65.34, 105.108, 111.34 (Vernon 2002), *supra* note 7.

## S U M M A R Y

Section 791.011(d)(1) of the Government Code provides in its first clause that an interlocal contract must "be *authorized* by the governing body of each party to the contract." TEX. GOV'T CODE ANN. § 791.011(d)(1) (Vernon 2004) (emphasis added). This provision requires that the governing body authorize an interlocal contract according to the same statutes and procedures applicable to its contracting authority generally. To determine whether an entity's governing body may delegate authority to approve an interlocal contract, one must examine the statutes governing the particular entity's contracting authority. The Texas A&M University Board of Regents is authorized by statute to adopt rules delegating authority to approve an interlocal contract.

The remaining language of section 791.011(d)(1), in authorizing the governing body of a municipally owned electric utility to establish procedures for entering into interlocal contracts that do not exceed $100,000 without requiring the approval of the governing body, *see id.*, necessarily permits delegation of such authority. And, by clear implication, this language indicates that a municipally owned electric utility's governing body must approve and may not delegate approval of interlocal contracts that exceed $100,000.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee